Here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Sergeant F. Hutchinson presides. Please be seated. Your Honor, the final case on the docket is the 1-2-23-0074, the people of the State of Illinois plaintiff Appellee v. Ranallo-Torres Defendant Appellate. Arguably on behalf of the Appellate, Mr. Jeffrey Vasquez. Arguably on behalf of the Appellee, Mr. Truman and the Court. Good morning. We still made it morning. And we will proceed and try to get you out of here before nighttime. All right. And Mr. Vasquez, if you're ready, you may proceed. Yes, Your Honor. Your Honor, may it please the Court, Counsel. My name is Frank Vasquez, and I am one of the attorneys for Ranallo-Torres. Mr. Torres was found guilty of aggravated criminal sexual abuse, Count 2. He was found not guilty of Count 1 and Count 3. I just want to very briefly detail the counts. The first count is alleged that my client's hand touched the complaining witness's vagina. The second count is my client's hand to the complaining witness's breast. The third count is my client's hand to the complaining witness's thigh. Judge, the reason why we filed this appeal is because we believe that the complaining witness's credibility issues, along with the trial court's analysis, would require this court to reverse my client's conviction outright. With regard to the first count, the complaining witness testified that she's asleep in her bedroom when the defendant touched her down here in the lower floor area. She testified, it's my side of my thigh towards the vagina. Complaining witness also recanted and stated that she denied telling the victim-sensitive counselor or the forensic interviewer that the defendant had touched her vagina when she was 12 years old. Based on her testimony that it was towards her vagina, the trial court granted the motion for a directed finding on Count 1. Also based on the complaining witness's recantation, the state even admitted that it did not have sufficient proof that defendant had touched the complaining witness's vagina. Your Honors, as to Count 3, the court also found my client not guilty. The trial court noted that the problem the court has with this incident is that the touching is over the blanket and over the clothes. No description of the blanket was given as to whether it was thin or thick. Could the defendant actually know where he was touching the victim? The trial court found that it could not infer beyond a reasonable doubt that defendant's touching of the complaining witness's thigh area through a blanket and through clothes was for the sexual arousal or gratification of the defendant. Moreover, the complaining witness did testify when she was asked. She did not hear Mr. Torres say anything or do anything to himself while he allegedly touched her. That brings us to Count 2. The same rationale that the court used in Count 3 should have caused the trial court to find that the defendant was not guilty in Count 2, but it found that Mr. Torres' conduct of touching and rubbing complained witness's left breast was for the sexual arousal or gratification of Mr. Torres. This finding of rubbing was the critical finding of fact that ended in the finding of his guilt on Count 2. But the complaining witness has testified on direct examination that the defendant allegedly touched her towards my breast. She never used the word rub on direct examination nor in cross-examination. The record clearly establishes that. When the prosecutor asked her, and where did he touch you on direct examination, she responded, towards my breast, which led the prosecutor to follow up with the lead question, did he touch you on the breast? And the complaining witness responded, yes, he did. On cross-examination, the complaining witness again repeated that it was toward her breast. She added this time that it was a very quick touch. Importantly, she admitted that the defendant did not come in contact with her skin and that the contact was over her clothes. This word rub surfaced for the first time during the prosecutor's redirect examination. It was only when the prosecutor asked the question, and again, was that a quick touch, a rub, or something, and the complaining witness responded, a rub. That not only contradicted the complaining witness's previous testimony on direct and cross-examination, that it was a very quick touch, but it was an obvious tailoring of her answer that the prosecutor wanted in her case. Counsel, was that objected to at the time? I'm sorry, Judge. Was there an objection to that question? I don't believe so, Judge. Another question was the victim was being translated, right? There was an interpreter? Judge, I forget, Judge. I'm not sure. Okay. That's all right. You can continue. Judge, Your Honors, the complaining witness's testimony that it was a very quick touch over her clothes is no different than count three that prompted a trial court to a directed verdict in favor of my client. Even with the word rub, the results should have been the same as in count three. Well, there is a slight difference if the issue is for sexual gratification. This particular area of the body is often considered. That's why it would be touched, rubbed, otherwise groped, because it would be for sexual gratification. There are some cases that indicate that. And so that would be different than a touch on the thigh as opposed to the first count. And we're not dealing with that one right now. We're dealing with the second count. So there is a difference than the third count. Yes. The actual area of the body, yes, Your Honor. Which is critical to this type of a case. Yes, Judge. Okay. The only dispute that we had was the complaining witness's testimony that started off with a quick touch to how it ended up into it was a rub, which we believe that's what the trial court focused on. But definitely the area of the body is very different, yes. Yes. May I ask, did a B.H. say on a cross that she probably told the victim witness counselor, Cassandra Osorio, that she was wearing a bra during the alleged incident? I thought she said that she was just wearing a shirt and no blanket. I don't remember her saying that she was wearing a bra. On cross? I'd have to look. I thought she said no blanket, a shirt. And she was touched in her left breast on top of the shirt. But I don't remember if she said she was wearing a bra. Thank you. Yes. Your Honor, for these reasons and the reasons stated in our brief, we respectfully request that you reverse our client's conviction on count two. The timing or the length of a touch, rub, or whatever else we're going to call it, or whatever she called it, is I guess what we'll say. The time of the touching, the length of the touching is not an issue, is it? Well, I think it would be to prove circumstantially sexual arousal or gratification. If it is a very quick touch, it may not infer an intent to fulfill a sexual gratification as opposed to a rub. And I think that is what the court focused on first. Hard to say what the court would have done, but I think it may have decided differently if the testimony would have remained a quick touch, a split-second touch, as opposed to a rub. But the area of the body is definitely very important on your Honor's side. Well, we have other people in the room, too, according to the testimony. And they're both sleeping because the defendant had apparently been drinking heavily or they felt he was intoxicated. And so rather than the mother sleeping in her room with him, she decided to sleep in the daughter's room. Yes. With, I think, a son, a younger, another child. Yes. And so maybe quick touch, whatever the touch, could the judge have taken into account other people were in the room and he did not want a scene to be made or noise or whatever the case may be? Yes. And did the judge actually mention the fact that there were other people? Yes, there were other people. It was the mother and his son. And the judge took that into account. Did he specifically say that, or can we just presume that he knew that based upon the testimony? Based on the testimony from what I read, there was no question that the mother and the son was in the bedroom. Asleep? Yes, that they were sleeping. Yes. All right.  No problem. Justice Newman? Okay. All right. Thank you, sir. You'll have an opportunity to reply to the state if you choose to do so. Thank you, Your Honor. Thank you. All right, Ms. Kuhn. Good morning, Your Honors. Good afternoon, Your Honors. Katrina Kuhn for the people of the State of Illinois. May it please the Court. Can you pull that microphone down just a bit? Certainly. Back. We'd like to see you as well as hear you. Sorry. The defendant makes no mistake about the fact that he's challenging credibility determinations that were made by the trial court. From the beginning of his brief to the end of his brief, he says that he's challenging credibility and that the victim's testimony was suspect and unbelievable is his assertion. As this Court is well aware, that is not a role of the reviewing court. The trial court made expressed credibility determinations based on viewing the witnesses, hearing the testimony, and respectfully, those credibility determinations need to be observed. The trial court found that there was nothing unreasonable about the victim's dislike of the defendant. The defendant had a pattern of, after drinking, of going into a room while she was sleeping and touching her. The trial court found that it could believe that the defendant touched the victim each of the three times that the victim testified to, even if two of those times didn't constitute criminal counts under the statutes. They still happened. The court found it could determine that those, that the defendant engaged in that conduct. And the defendant, in contrast, the defendant is not credible. The defendant provided a changing story. He initially, well, in addition to the fact that he had this ongoing pattern of behavior of entering the room at night and touching her, he admitted to the investigator that he would hug the victim even though she didn't like to be hugged. He knew that she didn't like to be hugged. He knew that these hugs were unwelcome. He told the investigators that he would drink to excess and that he would pass out, and that he also said he could not call B.H. a liar when he was confronted with her version of events. He then changed his story at trial to saying that he never touched her, he went to the door of her room, and that he, even though he was drunk, he knew exactly what he was doing, and he knew that he didn't touch her. He knew that he never went as further than the door of her room. But then later he said that he remembered in his testimony, he said that he remembered going in one time and removing a blanket from the victim because he was looking for his wife who was on the bed. And that the trial court could consider whether or not that testimony was credible, and the court could and did reject that testimony. And in rebuttal testimony, the defendant went back to his version of events where he was passed out. And the... Did this, just a follow-up on Justice Kennedy's question, did most of this testimony come in through an interpreter? I believe there was an interpreter. I don't remember if the interpreter interpreted for the victim and for the defendant. I know that there was an interpreter involved. Were they, was the defendant and the child, the young woman, were they both, they weren't fluid, obviously, in English, if there was an interpreter in the room, but did they have some ability to respond on their own? Could you tell that from the record? I don't recall being stopped by that in reading, and I don't recall noting that it was an issue, or noting that there was any, that the trial court had any issue understanding them, or, you know, again, the trial court could have asked, you know, asked for a different procedure if the trial court had any problem in understanding what was going on. Again, this was a bench trial. To that point, counsel, I was just going to ask. Certainly. You place great emphasis on the use of the term rub, as opposed to quick touch, right? And so rub was undoubtedly thrown out there in a leading question. So obviously there is a difference. What if we were to disregard the use of the term rub? Quick touch, is that enough to infer a purpose of sexual gratification or rub? It is. As Justice Hutchinson noted, there is no temporal requirement or temporal limit in the definition of sexual conduct. That definition is on page 12 of my brief. It requires a touch, and it can be over clothing. It does not need to be skin to skin. And I would respectfully disagree that the question was leading. The question was, and again, this is on page 13 of my brief. I have the entire Q&A. And that was on redirect examination. And it started with the court asking, the victim actually clarified her testimony and demonstrated it to the court. The court was able to view that. Obviously this court is not able to do that. And the court asked to see it again to make sure it understood the nature of what she was saying the contact was. And counsel then asked a multiple choice question. Was this a quick touch, a rub, or something else? And the victim said that it was a rub. And the victim, defense counsel tried to then argue, well, this was just a split second. And the victim pointed out that she was sleeping at the time. She couldn't have known how long he was touching her. She said, I would hope so. I would hope it was a second or split second I was sleeping. I don't know how long he was standing over me. You know, it was obviously long enough for her to have awakened. And she was startled to see this was happening. It was reasonable that he would stop touching her when she woke up. But we don't know how long it occurred. We just know that she felt a rub at the time she woke up. That was her testimony. So it wasn't the removal of the blanket, per se, that woke her up. It was some sort of contact that woke her up. Well, the victim testified as to this incident, which was the one that occurred when she was 14, count to that she did not have a blanket on. She was wearing a tank top. And I believe she was asked if she was wearing a bra, and I believe she said she was not. She was just wearing a tank top. And, again, the definition of sexual contact does not require skin to skin. It can be over clothing. No, you're right about that. But wasn't she asked on cross, didn't you tell Cassandra Osorio that you were wearing a bra? And her response was probably. Probably she told her that? Yes. That's what I read. Excuse me. At page 37. And I don't have that in front of me. If that's what the testimony said. Whether she was wearing a bra or not, you know, he still touched her and she could feel it. And she demonstrated for the court what that touch was. And, again, the defendant acknowledges that the standard here is the familiar standard of Collins and Jackson, which is that all reasonable inferences are to be made in the favor of the prosecution. The defendant touched the victim's breast, and he did it for the purpose of sexual gratification or arousal, and that is sufficient to support the defendant's conviction. But if we found that there's a, because she was asked over and over again, and I saw the transcript, as you did, it was clear during the defendant's testimony that he was being translated. I couldn't tell if there was a translator there when B.H. testified. But be that as it may, over and over she said, yes, split second. She agreed. She never, I don't think she used that word. She agreed with the defense attorney that it was split second. She did not use that word. That was the defense attorney's word. She agreed over and over again, on cross, that it was split second. So I think it might be reasonable to, in deference to the trial court, conclude that, you know, there's evidence in the record that there was a split second, and maybe generously it was a rub, although I question how a rub could last a split second, but let's assume it could. I would also point out in the record she says he rubbed, he was rubbing her thigh on page 64. But she does not, until asked, does not describe this as rubbing. She did not say that until the prosecutor offered her that. But then, again, when cross-examined, she always says split second or agrees that it's split second. Yes. So the issue isn't. I don't see the issue here. I don't see the question to be as great, let's put it that way, as to whether or not the trial court could have found there was contact, you know, through the skin. I saw that she agreed. I probably told Cassandra Osorio that I was wearing a bra, but be that as it may, she certainly said she had a tank top on. But then that leads us to what I see as a larger, more difficult issue, is what evidence in the record. And you're right, every intent should go towards the state. But what is the evidence in the record that this was done for sexual gratification, other than the location? Which, as I, it was not in the nipple. It was, the court said, the top of the left breast. So. Well, and again, I just wanted to make sure that. We could draw from the location, from the circumstances of the touch, whatever there is, whatever implications we could, that there is, this was done for arousal. But what is that? And I will address it. I just want to make sure I get to your earlier point about the bra. It doesn't matter if she was wearing a tank top alone or a tank top and a bra. Because there could certainly be a case where there's a lot of evidence that this is done for arousal, to arouse the victim or defend it, and yet the victim be fully and thoroughly and thickly clothed. I couldn't agree with you more on that. But, you know, what here, when it's certain she was thoroughly cross-examined and agreed, whatever it was, it was split second. And according to her, he turned wordlessly and left her there. The intent to gratify sexually can be, is almost always inferred from the circumstances. And here it's inferred from the nature of the. It's very obvious. But here, tell me what. The nature of the act. I say to people versus Burton, which is, you know, apart from the medical exam, touching of a woman's breast is inherently sexual. It is not done. You know, it's different than touching a thigh, as your honors have pointed out. It's a different part of the body. It is part of the definition of sexual contact, sexual conduct in the brief. And the ostrosity factors, which I go through in my brief, was the conduct made to arouse defendant. Again, it's not going to be. There doesn't need to be any proof that he was having any kind of sexual response. I cite a case on that in the brief. There does not need to be any indication that he was talking or moaning or anything like that. That is not required. But certainly if those facts are present, then that makes the conclusion more obvious. But almost, I would say all the other ostrosity factors are in our favor, that there doesn't need to be any indication of sexual, overt indication of sexual gratification. Was anyone else present? Was anyone else present? This defendant had a habit of going into her room when she was sleeping. Obviously, you know, he was doing it when no one else would see what he was doing. The fact that there were other people present here is de minimis, or if anything at all, because they were sleeping and he would know they were sleeping. The length of the contact. The rub was long enough that the victim woke up. Whether or however you want to call it, a rub or a split second touch, it was long enough that the victim woke up. There was no legitimate non-sexual purpose of this contact. The defendant did not claim that he was going in to wake her up or that he went in to, that she was sick and he needed to tend to her. He did not say that there would be no other reason for him to be going into the room at night and touching her in that area, especially given all the other, and again, he has an ongoing pattern and he has, he admitted that he would touch her and he knew she didn't like it. After she woke up and saw that he was touching her, he got up and, he didn't say anything to her. He got up and left the room. That has been another factor in Ostrowski where you can consider the defendant's conduct before and after. The court specifically noted that and is making this credibility determination. It specifically noted that, you know, when she woke up and saw him, he never, you know, he didn't say anything. He didn't say, oh, I thought you were mom or whatever, which was his excuse that the trial court could certainly reject. And so, and his conduct before and after can be considered in a more global sense in that looking at all of his previous enterings into her room and previous conduct and their relationship and also his conduct immediately after she woke up. He just walked, he quote, just walked out. Those were her, those were her words. Again, I also cite a case called Matthew K., which I point out that this was, where there's a case of an adult offender touching a minor, that can be used to determine that the contact had a sexual purpose. These were not children who were roughhousing and playing, so I would also direct the court to Matthew K. Are there any other questions I could answer for your honors? Justice Kennedy? Justice Moore? No, thank you. All right, if you'd like to sum up your position. Your honors, again, the defendant is clearly asking this court to make credibility determinations. The people ask that this court recognize its role as to consider all the evidence in the standard most favorable to the state, and for that reason we ask this court to affirm the defendant's conviction. Thank you. Mr. Vespas, you may respond if you wish. Your honor, counsel mentioned the case of People v. Burton. I agree with People v. Burton, but the facts are very different in that case. In that case, the defendant pushed the victim onto the bed. She landed on her back, and while he's sitting on her, he held her hands with one of his, put his other hand inside her shirt, and touched her breast underneath her bra. And that case stands for the proposition on how sexual gratification can be established via circumstantial evidence. But this is a very different fact pattern, and we believe that it is because of the complaining witnesses' evolving answers. Well, the one thing that doesn't seem to evolve, and for purposes of this question, I'll generally agree with your assessment, but the one thing that doesn't seem to evolve is the fact that she was awakened by something. She never says it was a noise. She never says it was a footstep. She says it was a touching. Now, how do we deal with that? Well, in the record, from my reading of the record, it doesn't state how long. There was never any determination as to how long the touching was. We don't know if she was touched and she instantly woke up. It's unclear from the record. All we do know is that she was touched on the left breast over the shirt by his hand. That is the allegation that she made. Initially towards the breast, then split second, very quick, to what evolved to a rub. The record is unclear as to how long, but it is clear if she woke up. But we don't, well, we don't have any time, there's no time limit. It doesn't have to be five seconds, it doesn't have to be a minute. There's nothing that sets a time limit for it. And she was, according to her testimony that was consistent, she was asleep when she noticed what was happening. So, you know, the fact that she, the revolution of going toward a rub versus a touch might be an issue, but the timing of this touch, she recognized it was short, but something woke her up. So had it been going on before, and then she woke up and he stopped, and is that the shortness of it? I mean, that doesn't seem to make any difference in this case, if there was a touch. Yes. The reason why I do believe that it was a critical determination for the trial court is because it relied on the word rub in its finding. Like I said earlier, I don't think, it's hard to place myself in the trial judge's position, but I think that that would have been different if it just would have remained a split-second touch. And I think that's why it was important that the prosecutor elicited that response on the redirect. Well, I think the trial judge says something, based on all of the forensic evidence that we have. I mean, I think the defendant's conduct of touching and rubbing her left breast was for sexual arousers. Well, now he's using both terms, so he doesn't direct it at a rub. He's using both terms, apparently because maybe he heard both terms from her mouth. So, again, I'm not sure, as you're saying, he was stuck on rub. He uses rub, but he also uses the word touch. You agree with that, correct? Yes, Your Honor. Your Honor, I have nothing further, unless Your Honor has a question. Thank you very much. And thank you, counsel, for your arguments here this morning. This afternoon, pardon me. Do we have a new clock in here? Yes, and it's almost impossible to read. But thank you for the improvement. But thank you also for your arguments here today. We do appreciate them.